JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey 07960
973-538-6890
ATTORNEYS FOR DEFENDANTS CLIFFORD KANE and KANE STEEL COMPANY

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARL METCALF, | : |
| | : Civil Action No.: _____ |
| Plaintiff, | : |
| | : **NOTICE AND PETITION FOR** |
| vs. | : **REMOVAL OF CASE FROM THE** |
| | : **SUPERIOR COURT OF NEW JERSEY,** |
| CLIFFORD KANE AND KANE STEEL COMPANY, | : **ATLANTIC COUNTY, LAW** |
| | : **DIVISION, SPECIAL CIVIL PART** |
| Defendants. | : |
| | : |

TO:    William T. Walsh, Clerk
United States District Court for the
District of New Jersey
Martin Luther King, Jr. Fed. Bldg. &
U.S. Courthouse
50 Walnut Street
Newark, New Jersey  07102

Regina C. Hertzig, Esq.
1650 Market Street
51st Floor
Philadelphia, Pennsylvania 19103

Defendants Clifford Kane and Kane Steel Company (collectively "Defendants"), by their undersigned attorneys, pursuant to 28 U.S.C. § 1446, 28 U.S.C. § 1331 and 28 U.S.C. §1441(c), respectfully submit this Notice and Petition for Removal of a cause of action from the Superior Court of New Jersey, Atlantic County, Law Division, Special Civil Part Docket No. DC-008149-10.  As grounds for this removal Defendants state:

## STATE COURT ACTION

1.     This is an action filed on June 25, 2010 by Robert Delgado ("Plaintiff") in the Superior Court of New Jersey, Atlantic County, Law Division, Special Civil Part, entitled <u>Carl Metcalf v. Clifford Kane and Kane Steel Company</u>, bearing Docket No. DC-008149-10.  A true copy of the summons and complaint is attached hereto as Exhibit A.

2.     On July 1, 2010, Defendants received the summons and complaint in this matter.  Therefore, this Notice of Removal is being filed within 30 days of service to Defendants and is timely filed within the provisions of 28 U.S.C. § 1446.

3.     Plaintiff has sued Kane Steel Company, as well as Clifford Kane, President of Kane Steel Company, for vacation pay allegedly accrued by Plaintiff while employed by Kane Steel Company.

4.     Defendants have not filed an answer or other pleading in the Superior Court, Special Civil Part, of New Jersey.

## REMOVAL / JURISDICTION

5.     This action is being removed to this Court on the ground it possesses original jurisdiction of this action.  Specifically, Plaintiff's claims are preempted by the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 144 *et seq.*

6.     Section 301 of the LMRA confers federal jurisdiction over suits alleging violations of contracts between an employer and a labor organization representing employees. (<u>See</u> 29 U.S.C. § 185(a)).  In addition, a suit brought by an individual employee against his employer for breach of collective bargaining agreement is within the scope of section 301. <u>DelCostello v. International Brotherhood of Teamsters</u>, 462 U.S. 151 (1983); <u>Antol v. Esposto</u>, 100 F.3d 1111, 1117 (3d Cir. 1996)("claims based squarely on a collective bargaining agreement

or requiring analysis of its terms are preempted by section 301 and *are removable* to the federal courts.")(Emphasis added)

7.     Defendant Kane Steel Company is an employer whose employees work in an industry affecting commerce, as defined in the National Labor Relations Act ("NLRA"), 29 U.S.C. § 152(2).

8.     United Autoworkers of America, Amalgamated Local Union No. 2327 ("the Union") is a labor organization as defined in the NLRA, 29 U.S.C. § 152.

9.     During his employment with Defendant Kane Steel Company, and at the time of his termination, Plaintiff was a member of the Union.

10.     On February 1, 2009, Defendant Kane Steel Company and the Union entered into a Collective Bargaining Agreement ("the Agreement") that set forth the wages, hours and other terms and conditions of employment, *including vacation*, for employees who were represented by the Union, including Plaintiff. The Agreement covers the time period from February 1, 2009 to January 31, 2012. Plaintiff's termination was on November 25, 2009, within the term of the Agreement. No contract entered into outside the Agreement exists or existed between Defendants and Plaintiff. Pertinent portions of the Agreement are attached hereto as Exhibit B.

11.     The Agreement encompasses many subjects either explicitly or by implication, including, without limitation:

a.     <u>Vacation</u>. The Vacation clause of the Agreement sets forth the terms and conditions under which employees, including Plaintiff, are eligible for paid vacation benefits during their employment. (Exhibit B, p. 9 Art. 11).

b.     Grievances and Arbitration Procedure.  The Agreement sets forth a mandatory and binding procedure for resolving disputes "as to the application or interpretation of the express terms of this agreement."  (Exhibit B, p. 21 Art. 36).  Further, the Agreement stipulates that if the Union and the Company are not able to satisfactorily resolve the issue, "the grievance shall be submitted to arbitration as hereinafter provided."  (Exhibit B, p. 22, Art. 36).

12.     Defendants are authorized to remove this action to this Court pursuant to the provisions of 28 U.S.C. § 1441 because this is a civil action over which the district courts of the United States have original jurisdiction founded on a claim or right arising under the laws of the United States.  The Court has jurisdiction over this matter pursuant to § 301 of the Labor Management Relations Act ("LMRA"), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

13.     Because Plaintiff was represented by a labor organization and covered under the terms of a collective bargaining agreement, resolution of Plaintiff's claim for vacation requires interpretation of the terms of the collective bargaining agreement—specifically, those terms regarding vacation.

14.     Plaintiff's claims for vacation pay are based upon the provisions of the Agreement which control vacation pay entitlements, if any, to Plaintiff.  Thus, Plaintiff's claims are inextricably intertwined with the terms of the collective bargaining agreement and are completely preempted by § 301 of the LMRA.  See Allis-Chalmers v. Lueck, 471 U.S. 202, 220 (1985); Ferraro v. Bell Atlantic Co., 955 F. Supp. 354, 357 (D.N.J. 1997); Antol, supra.

4

15.     Plaintiff's claim also is preempted by the National Labor Relations Act, 29 U.S.C. § 151 et seq., as the conduct referred to in the complaint is "arguably within the compass of § 7 or § 8 of the Act[,]" and as such, is outside the jurisdiction of the state courts. San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-46 (1959).

16.     Accordingly, Defendants are entitled to remove this action to this Court pursuant to the provisions of 28 U.S.C. § 1441.

CONSENT

17.     All named Defendants consent to the removal of this action.

NOTICE OF REMOVAL

18.     Defendants submit this notice and petition without waiving any defenses to the claims asserted by Plaintiff or conceding Plaintiff has pleaded claims upon which relief may be granted.

19.     Contemporaneously herewith, Defendants are filing with the Clerk of the Superior Court of New Jersey, Atlantic County, Law Division, a copy of this notice and petition, as well as a notice of filing of petition for removal.

RELIEF REQUESTED

20.     Defendants respectfully request that the United States District Court for the District of New Jersey accept this Notice and Petition for Removal of Case From the Superior Court of New Jersey, Atlantic County Law Division, Special Civil Part, and that it assume jurisdiction over this action and issue such further orders and process as may be necessary to bring before it all parties necessary for the trial.

21.     Defendants note the Union previously brought a claim for unpaid vacation pay on behalf of its members, including Plaintiff, in an action before this Court in the matter entitled, United Auto Workers of America, Amalgamated Local Union No. 2327 v. Kane Steel

5

<u>Company</u>, Civil Action No. 1:09-cv-06080-JBS.  An order of dismissal without prejudice was filed in that matter on July 15, 2010.  <u>See</u> Exhibit C hereto.

Respectfully submitted,

JACKSON LEWIS LLP
220 Headquarters Plaza
East Tower, 7th Floor
Morristown, New Jersey  07960

DATED: July 29, 2010

By:__s/Timothy D. Speedy_____
        Timothy D. Speedy, Esq.
ATTORNEYS FOR DEFENDANTS

777777 pleading001-nor(Metcalf).doc

# EXHIBIT A



FILED    Jun 25, 2010

REC'D FILE
- JP Special Civil Part Complaint
OF NEW JERSEY

**Superior Court Of New Jersey**
2010 JUN 25  AM 10: 18 **Law Division, Special Civil Part**

Carl Metcalf                                    Atlantic              County
_____
Plaintiff's Name

365 Roadstown Road                    Docket No _____ DC-008149-10
_____
Street Address

Millville, NJ 08332
_____
Town, State, Zip Code

609-319-0567
_____
Telephone Number
                        vs.

Clifford Kane and Kane Steel Company          **CIVIL ACTION**
_____
Defendant's Name (Person you are suing)           **Complaint**

2 Argyle Court
_____
Street Address

Margate, NJ 08402
_____
Town, State, Zip Code

_____
Telephone Number

Type or print the reasons you, the Plaintiff(s), are suing the Defendant(s)· (See instruction B)

On November 25, 2009, Clifford Kane, President of Kane Steel closed the doors to the Kane Steel Company facility in

Millville, New Jersey  Employer Clifford Kane and Kane Steel Company owe Plaintiff 104 hours of vacation pay in the

principal amount of $1824 16 under New Jersey Wage Act, NJ Stat Ann§§ 34 11-57 to-67

(You may attach more sheets if you need to)

The amount you, the Plaintiff(s) are demanding from the Defendant(s) $ 1824 16 _____ plus interest and
$ 84 25 ____ for the costs of suing

At the trial Plaintiff will need:  An interpreter. _____ Yes ✓ No   Indicate Language _____

An accommodation for a disability:          Yes ✓ No   Indicate Accommodation _____

I certify that the above matter in controversy is not the subject of any other court action or arbitration proceeding now
pending or contemplated, and that no other parties should be joined in this action

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will
be redacted from all documents submitted in the future in accordance with Rule 1 38-7(b)

Dated. 5-26-10

Your Signature

Regina C. Hertzig, Atty for Pltf
_____
Name Typed or Printed

RE: FILED
OF NEW JERSEY

SPECIAL CIVIL PART SUMMONS AND RETURN OF SERVICE - PAGE 2

2010 JUN 25 AM 10: 17

**Plaintiff or Plaintiff's Attorney Information:**

Name

Regina C. Hertzig, Esquire

Address

1650 Market Street, 51st Floor
Philadelphia, PA 19103

Telephone No  (215) 735 - 9099

| | |
|---|---|
| Demand Amount | $ 1824 16 |
| Filing Fee | $ 34 00 |
| Service Fee | $ 14 00 |
| Attorney's Fees | $ 41 25 |
| **TOTAL** | $ 1913 41 |

**SUPERIOR COURT OF NEW JERSEY**
**LAW DIVISION, SPECIAL CIVIL PART**

ATLANTIC          COUNTY

1201 Bacharach Boulevard
Atlantic City, NJ  08401

(609)  345 - 6700

Carl Metcalf

_____, Plaintiff(s)

versus

Clifford Kane

Kane Steel Company _____, Defendant(s)

Docket No:          DC-008149-10
              (to be provided by the court)

**Civil Action**
**SUMMONS**

(Circle one): ☒ Contract   or   ☐ Tort

**Defendant(s) Information:  Name, Address & Phone:**

Clifford Kane, 2 Argyle Court, Margate, New Jersey 08402
Kane Steel Company, c/o Clifford Kane, President, 2 Argyle Court, Margate, New Jersey 08402

| CRT | SCP | JUNE 5 2010 |
|---|---|---|
| DOC | DC | AMT | 18 |

**Date Served:  07/01/2010**

**RETURN OF SERVICE IF SERVED BY COURT OFFICER (For Court Use Only)**

Docket Number: _____   Date: _____   Time: _____

WM___ WF___ BM___ BF___ OTHER___ HT___ WT___ AGE___ MUSTACHE___ BEARD___ GLASSES___

NAME: _____   RELATIONSHIP: _____

Description of Premises: _____

I hereby certify the above to be true and accurate:

_____ Court Officer

**RETURN OF SERVICE IF SERVED BY MAIL (For Court Use Only)**

I, Nancy Ruggeri, hereby certify that on 07/01/2010, I mailed a copy of the within summons and complaint by regular and certified mail, return receipt requested.

*Nancy Ruggeri*

_____
Employee Signature

# EXHIBIT B

AGREEMENT

By and Between

KANE STEEL COMPANY

and

UNITED AUTOWORKERS OF AMERICA
AMALGAMATED LOCAL UNION NO. 2327

February 1, 2009 to January 31, 2012

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| ARTICLE 1. RECOGNITION | 1 |
| ARTICLE 2. UNION SECURITY | 1 |
| ARTICLE 3. DUES CHECKOFF | 2 |
| ARTICLE 4. MANAGEMENT RIGHTS | 3 |
| ARTICLE 5. PROBATIONARY PERIOD | 4 |
| ARTICLE 6. SENIORITY | 4 |
| ARTICLE 7. HOURS OF WORK | 5 |
| ARTICLE 8. OVERTIME | 6 |
| ARTICLE 9. WAGES | 7 |
| ARTICLE 9-A. WAGES FOR NEW HIRES | 7 |
| ARTICLE 10. HOLIDAYS | 8 |
| ARTICLE 11. VACATIONS | 9 |
| ARTICLE 12. SAFETY AND SANITATION | 11 |
| ARTICLE 13. NO DISCRIMINATION | 12 |
| ARTICLE 14. PLANT VISITATION | 12 |
| ARTICLE 15. BULLETIN BOARD | 12 |
| ARTICLE 16. MILITARY SERVICE | 12 |
| ARTICLE 17. LEAVE OF ABSENCE | 13 |
| ARTICLE 18. STRUCK GOODS | 13 |
| ARTICLE 19. FUNERAL LEAVE | 14 |
| ARTICLE 20. THE UNION AS PARTY AT INTEREST | 14 |
| ARTICLE 21. SAVINGS CLAUSE | 14 |
| ARTICLE 22. NO STRIKE - NO LOCKOUT | 14 |
| ARTICLE 23. PROMOTIONS AND TRANSFERS | 15 |
| ARTICLE 24. PROMOTIONS OUTSIDE THE BARGAINING UNIT | 17 |
| ARTICLE 25. NIGHT SHIFT | 17 |
| ARTICLE 26. GENERAL PROVISIONS | 17 |
| ARTICLE 27. NEW JOBS | 19 |
| ARTICLE 28. FIXED FINANCIAL ARRANGEMENT | 19 |
| ARTICLE 29. LIQUIDATION | 19 |

-i-

ARTICLE 30. SUBCONTRACTING ........................................................................ 19

ARTICLE 31. GOVERNMENT TRAINING PROGRAMS ..................................... 20

ARTICLE 32. JURY DUTY..................................................................................... 20

ARTICLE 33. SEVERANCE PAY .......................................................................... 20

ARTICLE 34. SICK LEAVE ................................................................................... 21

ARTICLE 35. DISCHARGE CLAUSE .................................................................... 21

ARTICLE 36. GRIEVANCE AND ARBITRATION PROCEDURE ....................... 21

ARTICLE 37. HIRING HALL.................................................................................. 23

ARTICLE 38. MOVING OPERATIONS ................................................................. 23

ARTICLE 39. KANE STEEL CO. UNION 401(K) PROFIT SHARING PLAN....... 23

ARTICLE 39-A.  HEALTH & WELFARE .............................................................. 23

ARTICLE 40. CREDIT UNION .............................................................................. 24

ARTICLE 41. MODIFICATION .............................................................................. 25

ARTICLE 42. DRUG AND ALCOHOL POLICY ................................................... 25

ARTICLE 43. DURATION AND TERMINATION ................................................. 25

SCHEDULE "A" - WAGE RATES .......................................................................... 27

-ii-

THIS AGREEMENT, made and entered into this 2nd day of February, 2009, by and between KANE STEEL COMPANY, hereinafter called "Employer" or "Company", and their successors or assigns, and UNITED AUTOWORKERS OF AMERICA, AMALGAMATED LOCAL UNION NO. 2327, hereinafter referred to as the "Union."

## WITNESSETH:

WHEREAS, it is the desire of the parties to this Agreement to promote mutual cooperation and understanding and to formulate rules to govern the relationship between them, now, therefore, in consideration of the mutual covenants, promises and agreements herein contained, the parties do hereby agree as follows:

## ARTICLE 1. RECOGNITION

<u>Section 1:</u>     Recognition:

(a)     The Employer recognizes the Union as the exclusive bargaining agency for all production and maintenance employees, including warehousemen, drivers and helpers, receiving and shipping employees of the Kane Steel Company within a plant-wide unit located at South 12th Street, Millville, New Jersey, but excluding all office clerical employees, technical employees, including draftsmen, guards, watchmen and supervisors as defined in the National Labor Relations Act.

(b)     The Company agrees to meet with and bargain with the accredited representatives of the Union on all matters pertaining to rates of pay, hours of employment and working conditions.

## ARTICLE 2. UNION SECURITY

<u>Section 1:</u>     All present employees who are members of the Union in good standing on the date of the execution of this Agreement shall maintain their membership in good standing for the term of this Agreement. All new employees hired after the execution of this Agreement shall become members in good standing of the Union at the expiration of sixty (60) work days in attendance following their date of hire. Membership in good standing shall be a condition of continued employment during the term of this Agreement, but no action shall be taken by the Company which will render the Company liable to charges of unfair labor practices.

<u>Section 2:</u>     The provision of Section 1 of this Article shall not apply to any employee covered by this Agreement to whom membership in the Union is denied or whose membership therein has been terminated for reasons other than the failure of such employee to tender his initiation fee or periodic dues.

<u>Section 3:</u>     Any employee who fails to meet the requirements of this Section shall not be retained in the employ of the Company, provided that the Union shall have notified the Company

-1-

<u>Section 5:</u>    The Company reserves the right to offer work to any employee wishing to work on a holiday at the employee's straight time rate in addition to his regular holiday pay.   The employee retains the right to refuse said offer.

<u>Section 6:</u>    Effective March 1, 1994, each regular full time employee is entitled to one (1) personal holiday of his choice in each contract year provided:

      (a)    Seven (7) calendar days advance notice is given and

      (b)    No more than three (3) bargaining unit employees are absent from work on that day.

## ARTICLE 11. <u>VACATIONS</u>

<u>Section 1:</u>    Every regular employee who has been actively and continuously working for the Employer for the specified periods shall receive the following vacations:

| | |
|---|---|
| One Year's service | - One Week |
| Three Years' service | - Two Weeks |
| Eight Years' service | - Three Weeks |
| Eighteen Years' service | - Four Weeks |

<u>Section 2:</u>    To be eligible for vacation benefits, any employee must have been on the active payroll for at least ten (10) months during the anniversary year or have worked at least seventeen-hundred and fifty (1750) hours during that period of time.   Employees working less than ten (10) months or less than seventeen-hundred and fifty (1750) hours during their anniversary year shall have their vacations prorated.

<u>Section 3:</u>    An employee who voluntarily quits his employment with the Employer upon one week's notice shall have his vacation prorated if he had actively and continuously worked for at least six (6) months during the then current anniversary year.   An employee who is discharged for cause shall forfeit all rights to vacation time or pay.

<u>Section 4:</u>    A full week's vacation pay shall be defined as forty (40) hours' pay at the employee's straight-time hourly rate.

<u>Section 5:</u>    The Company will post a vacation preference schedule on April 1.   Employees will indicate their preference on this schedule by May 1, and the Company will post the vacation schedule as soon as possible, however, not later than June 1.

<u>Section 6:</u>    If any of the paid holidays listed herein fall during an employee's vacation period, such employees shall receive an additional day's pay for such holiday unless an additional day off is worked out with management in advance, in writing.

<u>Section 7:</u>    Employees absent from work because of an injury or illness, which is compensable under Workman's Compensation, shall receive full credit towards their vacation for

-9-

the days on which they were absent from work because of such compensable injury or illness during the particular anniversary year in which the injury occurred.

Section 8:   Use of Vacation Time for Certain Absences.   If an employee is continuously absent for two (2) or more days up to and including five (5) days, and he provides medical documentation of said absences(s) to the satisfaction of the Company, he shall be allowed, at his option, to use up to five (5) days of vacation to pay for the absences which meet all of the conditions set forth above.

The total number of employees on vacation at any given time will be limited to 10% of the work force, with the exception of deer week, when one (1) additional man over the 10% shall be allowed to take vacation. However, this provision is limited to employees hired prior to February 1, 1975.

The Company shall take an employee's vacation preference into consideration when scheduling vacations. The Company will assign a vacation date to any employee who fails to indicate his preference. Vacations will be scheduled so as to not interfere with the efficient operation of the Company's business.

Once scheduled, vacation dates can be changed only by mutual consent.

When there is a choice to be made between employees requesting the same time, seniority shall be the governing factor.

Section 9:   Vacation Cash Bonuses in Lieu of Time Off.   Every regular employee who has been actively and continuously working for the Employer for the specified periods shall receive the following cash bonuses:

| | |
|---|---|
| Effective 2/1/06: Twenty five years | 40 hours of straight-time pay |
| Effective 2/1/07: Twenty four years | 40 hours of straight-time pay |
| Effective 2/1/08: Twenty three years | 40 hours of straight-time pay |

These cash bonuses will be paid in the paycheck following the achievement of the years of service by the employee, for anniversaries occurring after February 1, 2006.

Section 10:   An employee who is eligible for more than one (1) week of vacation, shall be entitled to take the excess over the one (1) week in full-day increments, up to a maximum of five (5) days, provided:

(a)   Three (3) work days' advance notice is given; and

(b)   No more than three (3) bargaining-unit employees are absent from work on the day.

-10-

## ARTICLE 34.  SICK LEAVE

An employee who is absent because of a serious illness necessitating a long period of recovery shall be required to request a leave of absence because of sickness.  No employee shall be discharged because of absence due to a serious illness or any other medical reason.  When an employee on a sick leave of absence has recovered sufficiently to return to work, he shall notify the Employer at least three (3) days prior to his anticipated date of return.  Said employee shall be required to furnish proof of illness and shall submit a release from his doctor that he is sufficiently recovered to return to work.

## ARTICLE 35.  DISCHARGE CLAUSE

Section 1:      Company may discharge any employee for just cause.  If the Union disagrees with the discharge, it may resort to the grievance and arbitration procedure as provided herein.

Section 2:      Company agrees to notify the Steward or Union representative prior to disciplining or discharging an employee.

Section 3:      In case of discharge, the first three (3) steps of the grievance procedure shall be waived and two (2) days substituted for the five (5) days specified in step 4.

Section 4:      The Company has the right to establish written work and safety rules which shall form the basis for disciplinary action taken by the Company.  Any changes in said work rules shall first be discussed with the Union.

Section 5:      Written Final Warning of Discharge either past, present, or future must be acted upon within one year from the date of issuance or it will expire on its one year anniversary date.

## ARTICLE 36.  GRIEVANCE AND ARBITRATION PROCEDURE

Section 1:      Should a difference arise between the Company and the Union or its members employed by the Company, as to the application or interpretation of the express terms of this agreement, such differences shall be considered a grievance which shall be processed in the following manner:

Step 1 - The Employee shall discuss the grievance with his supervisor (within three (3) working days after the grievance arose or became known to the grievant) for the purpose of settling same.

Step 2 - Failing to settle such grievance with the supervisor, the grievance should be reduced to writing within five (5) working days after the discussion in Step 1, signed and dated by the Shop Steward and presented to the supervisor for written answer.  Such answer must be given within two (2) working days after receipt of the written grievance.

-21-

Step 3 - Failing to settle such grievance with the supervisor, the written grievance shall be dated by the Shop Steward and presented within five (5) working days to the Production Manager or his substitute for answer. The Production Manager or his substitute shall investigate the matter and give his written answer to the grievance within two (2) working days and after discussing same with the Steward.

Step 4 - If the matter remains unsettled, the grievance shall be discussed between a representative of the Union and a representative designated by the Company within five (5) working days after the Union representative has received notice that the grievance was not settled in Step 3. If these officials are unable to satisfactorily effect a settlement, the grievance shall be submitted to arbitration as hereinafter provided.

Section 2:     The Company herein has the right to file a grievance against the Union or any of its agents or members. Such grievance will be processed as expeditiously as possible by the parties hereto.

Section 3:     The grievance and arbitration proceedings arising out of a grievance suffered or alleged to have been suffered by an employee shall be confined to the issues recited in the written grievance statement.

Section 4:     If a party desires arbitration, he shall submit the dispute to the American Arbitration Association or the State Board of Mediation or the Federal Mediation and Conciliation Service to select an Arbitrator in accordance with the Voluntary Rules of Labor Arbitration. The arbitration shall proceed in accordance with the rules of whichever agency is selected.

Section 5:     The decision of the Arbitrator shall be final and binding upon both parties and shall be fully enforceable.

Section 6:     It is understood that the Arbitrator shall not have the power to amend, modify, alter or subtract from this Agreement or any provision thereof.

Section 7:     It is agreed that time is of the essence in any arbitration, and both parties will exert their best efforts to obtain a speedy decision.

Section 8:     The cost of the arbitration shall be shared equally by both parties.

Section 9:     If the Union violates any of the time limits set forth herein, unless mutually extended in writing, its claim shall be waived. If the Company violates any of the time limits set forth herein, unless mutually extended in writing, the Union shall have thirty (30) days from the date of filing to proceed to the conclusion of Step 4.

and forwarded to the Credit Union within twenty-one (21) days after the last pay period of each month.

<u>Section 3:</u>    All employee authorizations or revocations shall be transacted between the employee and the Union. The Employer shall take action on Credit Union Account changes only upon written authorization from the Union.

## ARTICLE 41.  MODIFICATION

This Agreement may not be modified without the joint consent of the Union and the Employer.

## ARTICLE 42.  DRUG AND ALCOHOL POLICY

The parties have agreed to the terms of a drug and alcohol policy in accordance with Exhibit A which is incorporated herein by reference.

## ARTICLE 43.  DURATION AND TERMINATION

This Agreement upon ratification and signing by the parties hereto by their respective agents thereunto duly authorized shall constitute the sole Agreement between them and shall become effective February 1, 2009, and shall continue in effect until midnight, January 31, 2012. Thereafter, it shall renew itself for yearly periods unless written notice is given by either party to the other not less than sixty (60) days, but not more than ninety (90) days prior to the expiration date or any extension thereof that it is desired to terminate or amend the Agreement. In the event such notice is given, the parties shall begin negotiations within forty-five (45) days. If negotiations are not completed prior to the expiration date, this Agreement shall terminate unless extended by mutual Agreement of the parties. This Agreement supersedes the Agreement of February 1, 2003.

IN WITNESS WHEREOF, the parties hereto have set their hands this 2nd day of February, 2009.

UNITED AUTO WORKERS,                      KANE STEEL COMPANY
LOCAL 2327

BY: _____            BY: _____

BY: _____            BY: _____

BY: _____

BY: _____

BY: _____

BY: _____                              -25-

BY: _____

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

UNITED AUTO WORKERS
OF AMERICA

           Plaintiff (s)          :    Civil Action No.  09-6080(JBS)

      v.

                            :    **ORDER OF DISMISSAL**

KANE STEEL COMPANY
           Defendant (s)     :

                            :

It having been reported to the Court that the above-captioned action has been settled;

**IT IS** on this 15TH day of JULY, 2010,

**ORDERED THAT:**

(1) This action is hereby **DISMISSED** without costs and without prejudice to the right, upon motion and good cause shown, within 60 days, to reopen this action if the settlement is not consummated; and

(2) If any party shall move to set aside this Order of Dismissal as provided in the above paragraph or pursuant to the provisions of Fed. R. Civ. P. 60(b), in deciding such motion the Court retains jurisdiction of the matter  to the extent necessary to enforce the terms and conditions of any settlement entered into between the parties.

                                   *s/ JEROME B. SIMANDLE*
                                   UNITED STATES DISTRICT JUDGE

Hon. Jerome B. Simandle, USDJ

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED AUTO WORKERS OF AMERICA, AMALGAMATED LOCAL UNION NO. 2327 598 Shiloh Pike Bridgeton, NJ 08302 | : : : : | CIVIL ACTION NO. |
| Plaintiff | : : | |
| v. | : : | |
| KANE STEEL COMPANY, 301 South 12th Street Millville, NJ 08332 | : : : : | |
| Defendant | : | |

## C O M P L A I N T

1.  This action arises under Section 301 of the Labor-Management Relations Act of 1947, as amended (hereinafter "LMRA"), 29 U.S.C. §185. This Court has jurisdiction over this action pursuant to said Section 301. The Court has jurisdiction over the pendant state actions set forth in Counts II and III pursuant to 28 U.S.C. §1367.

2.  Plaintiff, United Auto Workers of America, Amalgamated Local Union No. 2327 (hereinafter "Union"), is an unincorporated association, commonly known as a labor union, with offices located at 598 Shiloh Pike, Bridgeton, New Jersey. The Union is a labor organization representing employees in an industry affecting commerce within the meaning of Section 2(5) of the National Labor Relations Act, as amended, 29 U.S.C. §152(5).

3.      Defendant, Kane Steel Company (hereinafter "Kane Steel"), is a corporation with offices located at 301 South 12th Street, Millville, New Jersey. Defendant Kane Steel is an Employer engaged in an industry affecting commerce within the meaning of Section 2(2) of the National Labor Relations Act, as amended, 29 U.S.C. §152(2).

4.      Plaintiff Union and Defendant Kane Steel are parties to a collective bargaining agreement which governs the terms and conditions of employment for the employees of Kane Steel who work at Kane Steel's facility in Millville, New Jersey and who are represented by the Union. The collective bargaining agreement is effective from February 1, 2009, through January 31, 2012. A true and correct copy of the collective bargaining agreement is attached hereto as Exhibit A.

## COUNT I
## INJUNCTIVE RELIEF

5.      The allegations of paragraphs 1 through 4 above are incorporated herein by reference.

6.      Article 29 of the collective bargaining agreement requires Kane Steel to provide written notice to the Union of its intent to liquidate the business "as far in advance as possible." Exhibit A at p. 19.

7.      On or about November 13, 2009, the Union learned from Kane Steel employees that Kane Steel intended to close the Millville facility and liquidate the business in the near future.

8.      On November 13, 2009, the Union, through its counsel, sent a letter via facsimile and regular mail to Clifford Kane, President of Kane Steel, requesting confirmation that the rumors of an impending closure were accurate and requesting that Kane Steel advise the Union of economic status of the company. A true and correct copy of the November 13, 2009 letter (hereinafter "November 13th letter") is attached hereto as Exhibit B.

9.      The November 13th letter further advised Kane Steel of its obligations to pay accrued vacation and severance benefits pursuant to Articles 6, 11, and 33 of the collective bargaining agreement. See Exhibit A at pp. 4, 9, and 20; Exhibit B.

10.     The November 13th letter also advised Kane Steel that the Union had not received two months of union dues that Kane Steel had deducted from employees' paychecks and was obligated to remit to the Union pursuant to Article 3, Section 1 of the collective bargaining agreement. Exhibit A at p. 2; Exhibit B.

11.     The November 13th letter also noted the Union's concern that Kane Steel may not have made all the required contributions to the 401(k) profit sharing plan, as required by Article 39 of the collective bargaining agreement and demanded that Kane Steel provide all documents related to contributions to the plan from April 1, 2009. Exhibit B.

- 3 -

12.      Kane Steel failed and refused to respond to the November 13th letter.

13.      On November 25, 2009, Kane Steel closed its doors at its Millville facility and ceased operations, without providing any notice to the Union as required by the collective bargaining agreement.

14.      Article 36 of the collective bargaining agreement provides that all grievances or differences concerning the "application or interpretation" of the terms of the agreement should be resolved in accordance with the grievance/arbitration procedure set forth in said Article.

15.      On November 30, 2009, the Union filed a grievance alleging that Kane Steel's failure to pay the amounts due to employees for severance and vacation benefits, its failure to remit union dues and its failure to account for its contributions to the 401(k) profit sharing plan violate the terms of the collective bargaining agreement. A true and correct copy of the grievance is attached hereto as Exhibit C.

16.      The amounts due to employees for severance and vacation benefits, the amount of union dues to be remitted to the Union and the contributions to be made to on behalf of employees to the 401(k) profit sharing plan are proper subjects for arbitration under the collective bargaining agreement.

- 4 -

17.     If Kane Steel is permitted to liquidate without paying the proper vacation or

severance benefits, remitting the proper monies to the Union and contributing the proper

amounts to the 401(k) profit sharing plan, then by the time an arbitration award issues, Kane

Steel's assets will have been dissipated and the Union would not be able to collect any amounts

found to be due and owing by the arbitrator.

18.     The Defendant will not suffer any loss or great inconvenience if required to freeze

the distribution of Kane Steel's assets until the validity of the Union's grievance is determined by

arbitration as provided for in the collective bargaining agreement.

19.     The employees of Kane Steel represented by the Union will suffer irreparable

injury if the Defendant is allowed to proceed with its plans to liquidate prior to the submission of

the matter to arbitration.

20.     Plaintiff has no adequate remedy at law.

21.     Plaintiff will suffer greater injury by the denial of the relief sought here than the

Defendant will suffer if the relief is granted.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter an Order

enjoining, first preliminarily and then finally, the Defendant from distributing or dissipating the

assets of Kane Steel until the grievance proceeding heretofore invoked by Plaintiff is concluded

under the terms of the collective bargaining agreement, and granting to the Plaintiff further relief

as may be deemed appropriate, in order to maintain the status quo pending the completion of the

grievance/arbitration proceeding, including costs and attorneys' fees.

**COUNT II**
**NEW JERSEY WAGE PAYMENT LAW**

22.    The allegations of paragraphs 1 through 21 above are incorporated herein by

reference.

23.    The Court has supplemental subject matter jurisdiction of the pendant state law

claims under 28 U.S.C. § 1367.

24.    In failing to pay accrued vacation, severance and other forms of compensation,

Defendant Kane Steel violates the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.1 *et. seq.*

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment

against Defendant for all accrued vacation, severance or other compensation that Defendant

failed to pay to its employees.

**COUNT III**
**CONVERSION**

25.    The allegations of paragraphs 1 through 24 above are incorporated herein by

reference.

- 6 -

26.     The Court has supplemental subject matter jurisdiction of the pendant state law claims under 28 U.S.C. § 1367.

27.     The union dues that Kane Steel deducted from employees' paycheck are the property of the Union and are to be held in trust and promptly remitted by Kane Steel to the Union.

28.     Kane Steel deducted from employees' pay checks but failed to remit to the Union dues deducted from employees' paychecks during the months of October 2009 and November 2009.

29.     By failing to remit the dues deducted from employees' paychecks, Kane Steel is liable for the tort of conversion.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment against Defendant for all dues deducted from employees' paychecks during the months of October 2009 and November 2009.

CLEARY & JOSEM LLP

By: /s/Jeremy E. Meyer
          REGINA C. HERTZIG, ESQUIRE (RCH 7441)
          JEREMY E. MEYER, ESQUIRE (JEM 2320)
          One Liberty Place, 51st Floor
          1650 Market Street
          Philadelphia, PA 19103
          (215) 735-9099

Dated: December 2, 2009

- 7 -

## VERIFICATION

The undersigned verifies that the allegations set forth herein in the foregoing Complaint are true and correct to the best of her knowledge. I am aware that if any of the foregoing statements are willfully false, I am subject to punishment.

Sandra Urban, Vice President
United Auto Workers of America
Amalgamated Local Union No. 2327